Our fourth case for argument today is Homesteader's Store v. Kubota Tractor. The question in this case is whether Kubota had good cause to terminate homesteaders when homesteaders hadn't met its agreed-upon sales goals and had been the single worst performing dealer in Wisconsin for two years. And the answer is yes, because deficient sales performance is good cause within the meaning of the Wisconsin Fair Dealership Law. And as the district court said, homesteader sales weren't cutting it no matter how you calculate it. To us, that seems like the end of the story. District court disagreed, but it wasn't answering the right question. It looked at our formula for measuring sales in isolation, but we didn't terminate homesteaders based on our formula for measuring sales in isolation. We terminated— Counsel, it sounds like, both orally and in your brief, you're treating this as an appeal from a permanent injunction, but it isn't. It's an appeal from a preliminary injunction, and our standard is abuse of discretion. The district court made the legally required findings about probability of success. So you need to argue that it's abused its discretion, and I wish you'd turn to that rather than just telling us your side of the story. Thank you, Your Honor. We believe the district court abused its discretion by making errors of law in misconstruing the Wisconsin Fair Dealership Law. For one thing, it looked at the standard in isolation. That's not how courts— And I will tell you one more thing. I was struck by the fact that your brief relies almost exclusively on federal cases. If you're going to make a serious argument about the Wisconsin statute, you should be relying on Wisconsin cases, but you aren't. Your Honor, we do rely on the Ziegler case, and we rely on federal cases interpreting Wisconsin law, as well as cases interpreting other states' laws. You know, it's true that a district court can't substitute its judgment for legitimate business decisions made by a dealer, but the Wisconsin Fair Dealership Law also requires a judge to determine what is essential and reasonable. So I would appreciate your telling us where you think the line is between a judge imposing on the business judgment of a dealer on the one hand and evaluating essential and reasonable practices on the other. Sure. So as you noted, courts consistently say, defer to the business judgment. We've never seen any other case where the dealer and the manufacturer agree to measure sales performance using a particular metric, and then a court subsequently says, that is not an essential and reasonable requirement, because in my judgment, the court's judgment, you should have used a different metric for measuring sales performance. And that makes sense, because the Wisconsin Fair Dealership Law is a general statute that applies across industries. It would be very odd for a statute like that to be prescriptive about how sales should be measured by a manufacturer and dealer in a particular industry. Now in our case, we do have agreement. We have agreement to the sales formula year after year. Tom Setters agreed to it when it signed dealer development plans. In addition, all of the other dealers in Wisconsin agreed to this. And that is very strong evidence of commercial reasonableness if the entire market is signing on to it. Well, look, it's surely true that a dealer's acquiescence to terms is strong evidence of the commercial reasonableness of an agreement. But it is also true that the fact that the parties agreed to the terms does not, of course, preclude a court from determining whether the agreement terms are essential and reasonable. And in weighing these two competing ideas, can't a court take into account bargaining power imbalances? Absolutely. And the statute is designed to avoid exploitation of a dealer's investment after it's signed on to an agreement. So changes, for example, an example that's cited in the case law is requiring an increase in sales of 500% in one year. That would be unreasonable, because it's too hard to achieve. But in this case, the parties have been applying the same formula year after year after year. So has every other dealer. This is not a change. It's not new. It's agreed upon. And Homesteaders wasn't having trouble achieving the sales metric in past years. So there simply is no basis on which to conclude that this metric is the problem. And I'd like to talk about the three, quote unquote, serious problems that the district court pointed to. So one of them was the court said we shouldn't be requiring Homesteaders to count only sales within its own local market area. Now, incentivizing local sales is a clear and important business priority of Kubota. We want our customers to return to their dealers for service and parts. And that is why we've required all along, it's not new, it's not surprising, we've required measuring sales based on within local market area sales only. Now, the district court acknowledged that that was our strategy, but it disregarded it because it said this strategy isn't working for Homesteaders. Well, Homesteaders isn't as committed to service as we are. There's testimony from Mr. Young, the owner of Homesteaders, that he declined. He did not want to become a Kubota certified service dealer because he wasn't willing to make the investment in the equipment that Kubota requires. So he's not a certified service dealer, which means local purchases, purchasers who care that they can come back to the dealer for service, aren't going to purchase from him. They're going to purchase from other dealers in the area. And that is why Homesteaders has a higher than average share of purchases by customers who are out of the LMA. Purchases that don't count under the sales formula that we have agreed to, which incentivizes within local market area sales. Now, the district court said, okay, if your measure isn't working for Homesteaders, that's a problem with your measure. But in fact, what that showed was Homesteaders wasn't executing on the sales strategy. It was aware all along of our incentivizing of sales to local customers in order to incentivize use of service, didn't buy into that, didn't go all in on our sales strategy, and its sales suffered as a result. That's not evidence of a problem with our sales metric. That's evidence of a problem with Homesteaders' performance under the sales formula, the essential and reasonable sales formula that it agreed to. Now, I could point the court to every case cited in our brief and Homesteaders' brief, every single one where there was an agreed upon sales formula. The court said, we defer to the business judgment of the parties. There's not a single one in which where the question is, was the sales metric unreasonable? There's not a single one where the court answered that question. Are all of the cases cases of preliminary injunctions? Nope, there's a variety. Bench trials, summary judgments, preliminary injunctions. But isn't that the point? Because what is the point of figuring that, you know, in a later? I mean, they could go out of business in the meantime. They absolutely could. They must establish a strong likelihood of success on the merits, regardless of what they're showing on irreparable harm is. And respectfully, we question that showing because they're a successful seller of other tractors as well, including both L.S. Tractor Brand and the Toro Brand. If there aren't further questions at this moment, I'd like to reserve my time for rebuttal. Thank you. Certainly, counsel. Mr. Breen. May it please the court. Patrick Breen for the Homesteaders Store, Inc. In its order granting Homesteaders a motion for a preliminary injunction, the district court held that Homesteaders has shown a sufficient likelihood of success on the merits of its Wisconsin Fair Dealership Law claim. In doing so, the court considered evidence regarding the sales metric utilized by Kubota to evaluate dealer performance, and in this case, to terminate a dealer. The sales metric was analyzed pursuant to the Wisconsin Fair Dealership Law's requirements, which state that no grantor may terminate a dealership agreement without good cause. The burden of proving good cause is on the grantor, and good cause is defined as failure by a dealer to comply substantially with essential and reasonable requirements imposed upon the dealer by the grantor. The district court's ruling focused on whether Kubota's sales metrics were essential and reasonable. Ultimately, the court found that Homesteaders makes a good case that Kubota's market share metric is not a reasonable and necessary dealership requirement. Specifically, the district court found that Kubota's LMA market share approach has three serious problems. Problem one, the LMAs are comprised only of whole counties. The court found that while it is convenient to do this, real world markets don't match county lines. The court found this to be an arbitrary metric that was unsupported by the evidence presented at the hearing. Problem two, Kubota could not explain... Mr. Breen. Yes. Your adversary says that even if Homesteaders is given credit for all of the sales it made everywhere, it still falls short of what it had promised to sell in its home counties. Now, what's your response to that? Are we talking about the argument in the brief about 2023? I am talking about the argument in the brief, indeed. Okay. Well, Your Honor, there is context to this. So Judge Peterson's opinion focused on whether the sales... I'm not asking about Judge Peterson's opinion. I'm asking about your response to this argument. Okay. Well, the 2023 sales performance would not have made them the worst performing dealer. They would not have met the metric. Look, the argument as I articulated it, at least as I understood it, is that Homesteaders fell short of its promise, of its agreement. Even if it's given credit for all of the sales in or out of the county. Is that true or false? I will take them at their word in the brief. I will say that that is true. All right. It was not a claim that they were the worst performing dealer. Yes. Maybe other dealers should be cut off, too. But then isn't it a serious problem that the district court said the reason I'm issuing this injunction is because it's arbitrary to exclude out-of-county sales, given the fact that there are many dealers on borders, people move across county lines. But Kubota says even if you give Homesteaders that full credit, it still falls short. The arbitrariness at that point is gone. I think that's a problem for you, is it not? Well, in 2023, that's a focus on the sales outside of the LMA counting. What Judge Peterson talked about was whether the actual LMAs and the percentages themselves are reasonable. I don't know what an LMA is. Sorry. I wish you would use real English words. Local market area. Each dealer is responsible for a local market area for its dealership and the sales for that dealership. So Judge Peterson's ruling had to do with whether the LMAs, which is the county. Please use real English words. His decision was whether the local market area and the percentage of responsibility within the local market area was reasonable. And those were the three concerns he had, that they were only whole counties, that they didn't give credit for LMAs, and that they were, please use real English words, that they did not give credit for sales made outside the local market area, and that the percentages seemed to be, as Judge Peterson said, just ballpark figures. So if we look at 2023, the numbers do not match the 68 requirement, but if you factor in all of the elements of what Judge Peterson said, I would submit that in 2023 the result could have been different, because it would have factored in the county assignment and percentage assignment. Problem number three, and we just talked about this, was the sales made within the dealer's local market area. Go back to problem number two, please. Sure, problem. Do you want me to cite number two, Your Honor? Oh, no. I mean, what about what seems to be the fact that even if the formula were changed to allow a more liberal inclusion of sales statistics, homesteaders would still not meet the agreement requirements. Can you elucidate on that? Well, I think as I was responding to Judge Easterbrook, if we're just talking about all sales and whether or not sales outside of the county are credited, I would submit that there's more to it than just that, because with respect to 2022, which is the year cited in the notice of termination when homesteaders was the lowest-performing dealer, the crux of Judge Peterson's decision is that, and I will read from his decision, he said, we're talking about, he said, at the level of the individual dealer, sales of even a dozen tractors would make a significant difference in the local market share average. The border of the local market share, local market, and the percentage of responsibility assigned to the dealer would have an even greater effect on the local market area market share, and thus whether the dealer meets the requirements of the dealership agreement. And this finding confirms a statement he made at the hearing. We're talking about selling a small number of tractors, so a shift of a few miles or a few percentage points makes a big difference as to whether homesteaders is going to make its percentages. So I would say it's a holistic view when we're talking about 2022 or any year with respect to homesteader sales performance. I want to touch upon the second guessing of the business judgment, and what Judge Peterson did at the hearing was he heard evidence as to whether or not the sales requirements are essential and reasonable. That's what he's required to do under the Wisconsin Fair Dealership Law, because the statute requires that the requirements imposed by the grantor upon the dealer must be essential and reasonable dealership requirements. So for Judge Peterson to have heard evidence and issued findings in an order is not second guessing. I would submit that's Judge Peterson doing his job. Also, the issue of whether homesteaders agreed to the sales formula, it is true that they agreed to the sales formula, but I think Kubota overplays his hand when it describes this as a collaborative process, because it was not. Rick DeYoung, the president of homesteaders, had no say whatsoever in assigning the counties or the percentages. In fact, every year the requirements were the same. Every year he met with his local regional sales manager, and it was the same thing every year. The sales goal is meet market share average. Nothing changed, and there was no input from Mr. DeYoung. Kubota also argues that because the district court disagreed with three aspects of Kubota's sales metric, it turned the Wisconsin Fair Dealership Law into a shield of invulnerability for bad managers, which, according to Kubota, is precisely what the WFDL is not meant to be. We submit that the Wisconsin Fair Dealership Law is meant to protect dealers from being held to unreasonable and unnecessary criteria in the face of unequal bargaining power. Section 135.0252B of the Fair Dealership Law provides that the purpose of the statute is to protect dealers against unfair treatment by grantors who inherently have superior economic power and superior bargaining power in the negotiation of dealerships. For that very reason, sales metrics like the one imposed by Kubota must be essential and reasonable dealership requirements. Kubota also argues that the mere fact that homesteaders agreed to the sales formula demonstrates that it's commercially reasonable. First, that's not the standard that applies. And second, as I stated, the fact that they agreed to the sales standards does not obviate the protections granted by the Wisconsin Fair Dealership Law. For those reasons, I would ask that the court affirm the district court's order. Thank you, Counsel. Ms. Flynn, anything further? Yes, Your Honor. I'd like to start with some of your questions. There's no showing that homesteaders would meet their sales requirements under any change that has been discussed in this case at any time. As Your Honor noted, there's no showing that excluding outside-of-local-market area sales would help them. There's no showing that removing Grant County from their local market area would help them. The district court speculated that moving county lines might help. No evidence of that at all. In fact, making the changes that the district court identified, such as allowing homesteaders to count its outside-of-local-market area sales, that would be a serious problem because it would require Kubota to discriminate against other dealers throughout the state who are not counting their sales to outside-of-local-market area purchasers. That would be arbitrary. There's nothing arbitrary about applying even-handedly a standard just because homesteaders can't make it based on their own practices. The question here is whether there is any reason to believe that homesteaders could possibly prevail at the end of the day, and there just isn't. Every basis the district court gave for questioning the essential and reasonable nature of our requirement was legally baseless and factually baseless. This preliminary injunction should be vacated, and as it stands, it's causing severe and urgent problems for Kubota because, without considering the actual performance of this dealer... Severe and urgent? The plaintiff posted a $150,000 bond. Is it your position that that's too small? We haven't challenged the bond. The problem is that we're... I know that. We would have heard if you did. But if the problem is that there are business problems in the interim, this should be a dispute about the amount of the bond. There are a few problems. One is we're entirely barred from terminating Kubota, excuse me, homesteaders, no matter what they do, because the preliminary injunction is categorical. And the other problem is because the analysis focuses entirely and exclusively on our metric without any regard to homesteaders' performance, it applies just as well to the lowest-performing dealer in another state, the second-lowest-performing dealer. Thank you very much. Thank you, Your Honor. The case is taken under advisement.